The HEALTH AND HOSPITAL CORPO-
RATION OF MARION COUNTY,
Appellant (Plaintiff),

v.

MARION COUNTY, Indiana, City-County Council of Marion County, Indiana, Board of County Commissioners of Marion County, Indiana, and the Sheriff of Marion County, Indiana, Appellees (Defendants).

No. 2–882–A–264.

Court of Appeals of Indiana,
Second District.

Nov. 19, 1984.

**1350**

Michael A. Bergin, Locke, Reynolds, Boyd & Weisell, Thomas R. Neal, Gen. Counsel, The Health and Hospital, Corp. of Marion County, Indianapolis, for appellant.

Richard S. Ewing, Chief Litigation Counsel, Kristie L. Hill, Deputy Corp. Counsel, Robert M. Kelso, Asst. Corp. Counsel, City-County Legal Div., Indianapolis, for appellees.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Plaintiff-appellant, the Health and Hospital Corporation of Marion County (Health and Hospital), appeals the trial court's decision by way of summary judgment that it has the duty to pay for hospital care for prisoners of the defendant-appellee Sheriff of Marion County (Sheriff) treated at Wishard Memorial Hospital (Wishard Hospital), which is owned and operated by Health and Hospital.

We reverse.

## FACTS

On May 30, 1980, Health and Hospital filed an action for declaratory judgment against Sheriff, seeking a pronouncement of the responsibilities of the parties as to payment for care given to prisoners of the Sheriff by Wishard Hospital. Health and Hospital amended the complaint to add defendants-appellees Board of Commissioners (Commissioners), City-County Council of Marion County (Council), and Marion County, Indiana (Marion County) as defendants. [Collectively, the defendants-appellees, including Sheriff, are hereinafter cited as Appellees].

When protracted negotiations between Health and Hospital and Appellees proved futile, the parties filed a stipulation of facts and motions for summary judgment. After a hearing, the court issued its findings, conclusions, and judgment in favor of Appellees on March 30, 1982.

The pertinent findings reveal that Health and Hospital is a municipal corporation created and organized under Ind.Code 16–12–21 (1982) [hereinafter cited as the Health and Hospital Act]. Health and Hospital owns and operates Wishard Hospital, where medical treatment and hospital care are provided to inmates of Sheriff's county jail. Prisoners have been and are brought to Wishard Hospital when the Sheriff believes they are in need of hospital care or medical services. The prisoners remain in Sheriff's custody during transportation to and treatment at Wishard Hospital.

The Sheriff provides deputies who guard Sheriff's prisoners while they are at Wishard Hospital. Health and Hospital employs personnel and buys supplies and equipment needed to provide medical services and hospital care to Sheriff's prisoners at Wishard Hospital.

The trial court's findings declare that the Council, which is the legislative body of the consolidated city of Indianapolis and of Marion County, has statutory power to adopt a budget and appropriate monies for the Sheriff.[1] The Council also possesses the power to review and modify the budget and tax levies of Health and Hospital.[2] Health and Hospital has requested that the Sheriff pay for care rendered to his prisoners while at Wishard Hospital. Though Sheriff has made no payments since 1953, he has included the estimated amounts for that care in his budget request to the Council for the last two years prior to the initiation of this action; however, the Council has deleted those amounts from the Sheriff's budget estimates each year.

The court's findings further reflect that Health and Hospital has included the anticipated cost for treatment of Sheriff's prisoners at Wishard Hospital in its proposed annual budget for each budget year from 1955 through 1982, but not as a separate line item. The anticipated costs were likewise included in Health and Hospital's request for a particular tax levy. Since 1970,

---

1. IC 36–3–4–18 (1982) (formerly IC 18–4–4–4 (1976)).

2. IC 36–3–6–9 (formerly IC 18–4–4–4.5).

Health and Hospital's budgets have been submitted to the Council for its review and modification.

The findings also indicate that the Sheriff is responsible for taking care of the jail and its inmates. He has the care and custody of his prisoners and owes those prisoners a duty to take reasonable precautions to protect their lives, health, and safety. The Sheriff and the Commissioners are subject to *Marion County Jail Inmates v. Broderick*, (filed March 24, 1976) S.D.Ind. No. IP 72–C–424, a memorandum decision of the United States District Court for the Southern District of Indiana, which implemented the Marion County jail rules. The jail rules, in part, obligate the Sheriff to follow specified regulations and procedures for providing medical care to his prisoners. The Sheriff is responsible for summoning medical help when prisoners in his legal custody need care. Under the jail rules, the Sheriff and jail physician decide when and if a prisoner should be sent to Wishard Hospital, but, at Wishard Hospital, the hospital doctors and staff make all decisions relating to medical care, including when a prisoner is able to return to the jail. *Record* at 295–98.

Thus, the findings reflect that Health and Hospital has provided substantial non-reimbursed care to prisoners of the Sheriff, which monies have necessarily been absorbed in Health and Hospital's budget. This information is also reflected in an affidavit filed with the trial court at the time of the summary judgment. *Record* at 328–30.

On this factual basis, the court grounded its conclusion that Health and Hospital "has the duty and responsibility to provide and fund medical services and hospital care to prisoners of the Marion County Sheriff when summoned by him." *Record* at 298. Concluding that "[n]one of the Defendants [Appellees] have the duty to provide or fund" the care at issue, the court found the

law to be with Appellees and accordingly entered judgment in their favor. *Id.*

Health and Hospital's motion to correct error was denied on July 16, 1982. This appeal follows.

### ISSUES

Two issues are presented for review:

1. Did the court err in concluding as a matter of law that Health and Hospital has the duty and responsibility to provide medical services and hospital care to prisoners of the Sheriff at Wishard Hospital?

2. Did the court err in holding as a matter of law that none of the Appellees have the duty to provide or fund medical services and hospital care rendered to prisoners of the Sheriff by Wishard Hospital?

### STANDING

A submerged question not raised by the parties needs to be levitated to the surface; to-wit, standing. Is this merely a dispute between local governmental units inhabited by opposing political parties who are engaging in an intramural dispute in which there is no justiciable harm? Is this case an appropriate one for judicial review?[3] If not, we have no jurisdiction to reach the merits of this appeal. *City of Indianapolis v. Indiana State Bd. of Tax Comm'rs*, (1974) 261 Ind. 635, 308 N.E.2d 868. Our conclusion is that this is not an intramural contest between governmental units. There is a justiciable controversy.

Health and Hospital is a municipal corporation, legislatively created and unique to Marion County. *Marion County Dep't of Pub. Welfare v. Methodist Hosp.*, (1982) Ind.App., 436 N.E.2d 123; IC 16–12–21. It possesses two statutorily recognized sources of revenue: (1) the collection of reasonable charges for medical services rendered from patients able to pay, IC 16–12–21–28(14), or from entities required to

---

**3.** To aid the court in its consideration of this question, the parties presented oral argument

addressing the issue of standing.

pay on a patient's behalf, IC 16–12–21–28(4), –21–28(13), and (2) a tax levy calculated "to provide funds for the operating expenditures necessary to carry out the powers, duties and functions of the corporation." IC 16–12–21–45. The budget and levy are subject to review by the Council, IC 36–3–6–9(a)(2), and the tax levy is also subject to review by the County Tax Adjustment Board and the State Board of Tax Commissioners. IC 16–12–21–45. As a unit of the Consolidated City-County Government of Marion County (Uni-Gov), the Sheriff's budget requests are subject to Council approval and appropriation. IC 36–3–6–1 to –6–9. Thus, the parties on opposite sides of this dispute appear to be technically within the control of a third party to the same dispute. Is the reality of a true controversy present? Is there special injury? *See Cablevision v. Colby Cable Corp.*, (1981) Ind.App., 417 N.E.2d 348, *trans. denied.*

■ Health and Hospital began this action by filing for a declaratory judgment.[4] Two prerequisites exist for standing to prosecute a declaratory judgment action. The party must have a "substantial present interest in the relief sought." *Lutheran Hosp. v. Department of Pub. Welfare*, (1979) Ind.App., 397 N.E.2d 638, 646. And, the party must show "that a question has arisen affecting their rights which ought to be decided in order to safeguard such rights." *Id.*

■ Health and Hospital possesses a substantial interest in the relief it seeks. The affidavit of Charles Robbins (Robbins), the financial planner for Health and Hospital, reveals that for the years immediately prior to the filing of this action Health and Hospital provided uncompensated medical services to prisoners of the Sheriff in the following amounts: In 1978 the cost of services was $942,886.00; in 1979 the cost of services was $1,156,000.00; in 1980 the cost of services was $1,105,000.00; and in 1981 the cost of services was $1,849,000.00. *Record* at 328. Robbins's affidavit further stated that,

> "there is no tax or other government revenue available to Wishard to pay for the cost of this care. Health and Hospital's tax and grant revenues support its public health, administration, and hospital services. Because the public health and administrative services mandated by Health and Hospital's enabling statute produce almost no income, tax revenues are used to offset almost all of its costs....
>
> \* \* \* \* \* \*
>
> Government tax revenues available to offset Wishard's costs in 1981 amounted to only 19 million.... The remainder of Wishard's revenue must come from paying patients or other services."

*Record* at 329–30. Thus, Wishard's tax levy revenues are insufficient to meet its budgetary needs. If, in fact, the duties of Health and Hospital do not include rendering uncompensated medical care for Sheriff's prisoners, it is reasonable to infer Health and Hospital could be reimbursed for more than $1,000,000.00 per year. In *Lutheran Hosp., supra*, this court found that three hospitals had standing to file a declaratory judgment action since they would receive over $450,000.00 in reimbursements for medical care rendered if their suit against the Allen County Department of Public Welfare was successful. Health and Hospital, a separate municipal corporation, seeks a declaration affirming its right to reimbursement, as did the private hospitals in *Lutheran Hosp., supra.* This constitutes a substantial present interest in the relief Health and Hospital seeks, for Health and Hospital is seemingly deprived of more than $1,000,000.00 a year in needed revenue.[5]

---

4. IC 34–4–10–1 to –10–16 (1982).

5. Cases in which a municipal corporation has been denied standing reveal that the corporation itself was attempting to assert the rights of another party (typically a taxpayer) and, there-fore, lacked a substantial present interest in the relief sought. *See Board of Comm'rs v. Kokomo Plan Comm'n*, (1975) 263 Ind. 282, 330 N.E.2d 92; *City of Indianapolis, supra; Cablevision, supra.*

The determination of the charges for services rendered by Wishard Hospital, however, is a matter vested exclusively in Health and Hospital and is not subject to review by any other entity.[6] Health and Hospital is specifically empowered "[t]o adopt a schedule of reasonable charges for all patients able to pay in full or in part *and collect the same.*" IC 16–12–21–28(14) (emphasis supplied). This commandment, coupled with Health and Hospital's expressly granted power as a municipal corporation to sue and be sued, IC 16–12–21–28(1), clarifies that the foundation of this action is an assertion of a right to payment for services rendered which is independent of any control by the Council. Health and Hospital is statutorily commanded to obtain revenue, and one potential source of revenue is the Sheriff, who has refused to pay for services rendered. Therefore, fear of a collusive suit seeking an advisory opinion appears groundless. Thus, we conclude that Health and Hospital does have standing to bring this action, and we proceed to the merits of the case.

DECISION

ISSUE ONE—Did the court err in concluding as a matter of law that Health and Hospital has the duty and responsibility to provide medical services and hospital care to prisoners of the Sheriff at Wishard Hospital?

PARTIES' CONTENTIONS — Health and Hospital takes the position that as an independent municipal corporation its power and authority is strictly limited by statute. Since the Health and Hospital Act is devoid of any reference to a duty to provide nonreimbursed care to inmates of the Marion County Jail, Health and Hospital asserts

the court's decision to the contrary is erroneous.

The Appellees counter that Health and Hospital does have a duty to render uncompensated care because such a duty is implied in the Health and Hospital Act. Also, they argue the duty is inherited from predecessors of Health and Hospital and parallels the duty to provide nonreimbursed care for indigents. Additionally, Appellees argue that Health and Hospital is estopped from denying the duty which the court found because of administrative interpretations placing that duty on Health and Hospital and because of the past acts of Health and Hospital of providing nonreimbursed care. Finally, they conclude that the alleged duty is imposed on Health and Hospital because of appropriate deference to the will of the Council in its refusal to allocate funds under the home rule provisions of the Indiana Code.

CONCLUSION—The trial court erred in concluding as a matter of law that Health and Hospital has the duty and responsibility to provide nonreimbursed medical services and hospital care to inmates of the Marion County Jail who are treated at Wishard Hospital.

This purely legal problem is better understood if divided into separate parts. We first consider whether any express duty has been imposed on Health and Hospital by statute or if such a duty may reasonably be implied in the Health and Hospital Act. Then, we look at Appellees' nonstatutory assertions of estoppel and deference to the home rule powers of the Council.[7]

### A. EXISTENCE OF AN EXPRESS STATUTORY DUTY TO PROVIDE CARE

The Health and Hospital Corporation of Marion County is no headless horseman

---

6. In *City of Indianapolis, supra* (Givan, J., dissenting), the suggestion was made that the components of Uni-Gov were so interrelated that the City of Indianapolis would necessarily have a substantial present interest in the budgets of each of the subunits of Uni-Gov. The point may be well taken in regard to budget disputes; however, Health and Hospital is not a governmental subunit of Uni-Gov, and the controversy before us is more than a budget dispute.

7. As long as the medical needs of prisoners are met, how the cost of that care is apportioned between the health care provider and the governmental entity with custody of the prisoners is a matter of state law. *City of Revere v. Massachusetts Gen. Hosp.,* (1983) 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605. Our analysis is, therefore, firmly rooted in the law of Indiana.

galloping aimlessly out of the past. It was sired by the legislature in 1951 and endowed with limited capabilities. Like other such specially created government corporations, the courts have been reluctant to expand its powers. *"A municipal corporation* is an instrumentality of the State and *possesses only those powers expressly granted by statute.* Any implied power 'must be indispensable to the attainment of the declared objects and purposes of the corporation.' " *City of Evansville v. Byers,* (1964) 136 Ind.App. 448, 454, 202 N.E.2d 399, 402 (emphasis supplied). *See also* 3 C.D. SANDS, SUTHERLAND STATUTORY CONSTRUCTION § 64.02 (1974).

█ The Health and Hospital Act does *expressly* require Health and Hospital to provide certain nonreimbursed services, such as nursing services to county grade and high schools and services to indigents within Marion County not served by the Department of Public Welfare. IC 16–12–21–28(4). When certain items or words are specified or enumerated in a statute then, by implication, other items or words not so specified or enumerated are excluded. *Common Council v. Peru Daily Tribune, Inc.,* (1982) Ind.App., 440 N.E.2d 726; *Wardship of Turrin,* (1982) Ind.App., 436 N.E.2d 130. So says that famous doctrine of statutory construction, expressio unius est exclusio alterius. *See* 2A C.D. SANDS, *supra,* § 47.23 (1973). A careful reading of the Health and Hospital Act reveals that Health and Hospital is *not* expressly granted the power or assigned the duty to provide nonreimbursed medical or hospital services to prisoners of the Sheriff or any other custodial authority. There is no such provision, but can it be implied?

## B. IS THERE AN IMPLIED DUTY TO PROVIDE THE SERVICES?

A duty could be implied in the Health and Hospital Act in two ways: (1) if the duty to provide such care was inherited from predecessor entities of Health and Hospital, or. (2) if the duty is parallel to Health and Hospital's undisputed duty to provide nonreimbursed care to some indigents.

(1) Was a duty inherited from predecessors of Health and Hospital?

█ The General Assembly did provide for the transfer of duties and powers to Health and Hospital from predecessor or redundant agencies. IC 16–12–21–32 specifically directs that Health and Hospital will assume the powers of other agencies in two situations. First, when a duty is imposed *by the Health and Hospital Act,* which was the duty of another entity "at the time of the taking effect" of the Health and Hospital Act, then Health and Hospital assumes those powers and responsibilities. *Id.* However, this provision is of no avail for we have already seen that the Health and Hospital Act itself does not expressly provide for treatment of Sheriff's prisoners. Second,

"any duties now conferred upon any local board of health within the county or any city therein or upon any local health officer or director by any ordinance or code shall be performed by the corporation, created by this Act or the director of public health as the case may be."

*Id.* This aspect of IC 16–12–21–32 mandates that we review the three ordinance and code provisions which Appellees claim pass the duty to provide nonreimbursed care through to Health and Hospital.

There is no basis for concluding that Revised Statute 1881 § 5764 could convey any duty to Health and Hospital. Although that statute did relate to the employment of doctors to treat prisoners in the county jail, it was held to be impliedly repealed by the enactment of Revised Statute 1881 § 4993, which we will treat later. *See Lamar v. Board of County Comm'rs,* (1892) 4 Ind.App. 191, 30 N.E. 912. Likewise, an 1879 Indianapolis city ordinance, which established the city dispensary, is of no consequence. Although the ordinance directs the city dispensary to provide medical attention for prisoners of the city prisons, it specifically excludes "the inmates of the county jail of Marion County." *Record*

at 668–69. Obviously, an ordinance which creates no duty can convey no duty.

■ Revised Statute 1881 § 4993, which we alluded to earlier, created separate ex officio Boards of Health for cities and counties. Each county board of health consisted of the County Commissioners. This statute further provided in part,

> *"The Secretary of such local Boards of Health ... shall be the Health Officer of every town, city, or county, respectively* for the purposes provided in this Act, and shall be allowed such compensation from the ... county treasury, respectively, as the Board electing them may determine: Provided that *the Secretary of each county board of health shall render such medical and surgical services as may be required by persons confined in the county jail of such county."*

Revised Statute 1881 § 4993 (emphasis supplied). This provision required the secretary of a county board of health to provide medical services to inmates of a county jail. It appeared to create a position which is analogous to the present-day jail physician, as opposed to an independent provider of care such as Health and Hospital. However, we need not decide the scope of the secretary's duties because this statute was repealed by 1949 Ind.Acts, ch. 157, § 2400 (effective July 1, 1949). Therefore, whatever the duty conferred on the secretary of the local board of health, it was not a duty existing at the time of the enactment of the Health and Hospital Act in 1951, as contemplated by IC 16–12–21–32.[8] Thus, we conclude that no duty to provide nonreimbursed care to Marion County Jail inmates was inherited or assumed by Health and Hospital at the time of its creation.

(2) Is a duty implied by the express duty to care for certain indigents?

■ Health and Hospital is expressly required to render uncompensated care to certain indigent persons. The Health and Hospital Act plainly states that Health and Hospital "shall furnish medical care to the indigent within the county other than to those for whom such medical care is furnished by the Department of Public Welfare under the laws of this State." IC 16–12–21–28(4). If "the meaning of a phrase is clear and unambiguous, the words used will be given their plain, ordinary, and unbridled meaning." *Marion County Dep't of Pub. Welfare, supra,* at 126. This provision imposes a mandatory duty on Health and Hospital to provide care for certain specified indigents, unless the department of public welfare is liable for that care. IC 16–12–21–28(4). Because the specific inclusion of one entity usually precludes the implication of another entity's inclusion in the same statutory provision, *Common Council, supra; Wardship of Turrin, supra,* we must conclude Health and Hospital would be solely liable for the care rendered those specified persons. Although the Appellees maintain most of the Sheriff's prisoners are pretrial detainees and are therefore indigent, we need not decide if those persons are indigent within the terms of this statute. That determination has not been made and is not before us in this declaratory judgment action. It awaits an appropriate forum for resolution on an individual basis.[9]

Having found no express or implied duty in the Health and Hospital Act, with the exception of a mandatory duty to provide care for certain indigents (when determined), we briefly consider the suggested nonstatutory sources for imposing such a

---

**8.** It is true that 1949 Ind.Acts, ch. 157, § 650 does preserve the city department of public health, which was created by 1945 Ind.Acts, ch. 200, § 2, for cities of the first class (those over 300,000). Though that provision did still control cities of the first class pursuant to the 1949 Act, those provisions deal only with cities and are therefore not applicable to *county* duties.

**9.** We do observe that indigent hospital care and standards for provision of that care are provided in IC 12–5–6–1 to –6–11 (1982). Inmates and prisoners of state institutions clearly are not considered indigent for purposes of hospital care and treatment. *See* IC 12–5–7–1 to –7–6 which provides for payment of medical care for inmates and patients of certain state institutions.

duty on Health and Hospital: estoppel and home rule.

## C. ESTOPPEL

Estoppel, the Appellees say, prevents Health and Hospital from denying that it has a duty to provide uncompensated care to jail inmates because of statutory interpretations by administrative agencies and the inclusion by Health and Hospital of the costs of such care in its past budgets.

 It is true that the question of payment for care rendered by Wishard Hospital to prisoners of the Sheriff has been considered by various Indiana agencies. The Indiana State Board of Tax Commissioners and the Indiana State Local Tax Control Board have apparently expressed an opinion that Health and Hospital could and might include inmate medical care costs in its budget or tax levy requests. *Record* at 291–93. To the contrary, the State Board of Accounts has expressed itself as knowing of no statutory authority for Health and Hospital to provide non-reimbursed medical care for Marion County Jail inmates. *Record* at 332. We recognize that an administrative interpretation is accorded deference when that agency is interpreting its own statute. *Beer Distribs. of Ind., Inc. v. State ex rel. Alcoholic Beverage Comm'n,* (1982) Ind.App., 431 N.E.2d 836, *trans. denied; Department of Revenue v. United States Steel Corp.,* (1981) Ind.App., 425 N.E.2d 659. However, there is insufficient basis to hold Health and Hospital estopped. The administrative interpretations which do exist clearly conflict with one another, and neither agency is shown to be interpreting its own statute. Therefore, the existing administrative pronouncements are not entitled to deference from this court.

 Health and Hospital is not estopped from denying the asserted duty because of its inclusion of costs for such care in its budgets. *Both* Health and Hospital and Sheriff have included costs for prisoner medical care in their budgets. Sheriff's inclusion of such costs in his budget requests obviates any showing on his part of reasonable reliance upon Health and Hospital's past actions. Absent reasonable reliance by the Sheriff on Health and Hospital's actions there can be no estoppel. *Turner Transp., Inc. v. Indiana Employment Sec. Bd.,* (1983) Ind.App., 448 N.E.2d 300. Effecting an estoppel by Health and Hospital's action is also inappropriate because of the failure to show prejudice from any such reliance by the Sheriff. *Individual Members of Mishawaka Fire Dep't v. City of Mishawaka,* (1976) 171 Ind.App. 95, 355 N.E.2d 447.

Having found no estoppel to exist, we examine finally the question of whether the home rule provisions of Indiana law require the imposition of the asserted duty on Health and Hospital.

## D. HOME RULE

The enactment of so-called home rule provisions reflects "[t]he policy of the state ... to grant units [counties, municipalities, or townships] all the powers that they need for the effective operation of government as to local affairs." IC 36–1–3–2 (1982). Mindful of this policy statement, could the Council's refusal to appropriate funds requested in Sheriff's budget to pay for inmate medical care be deemed an act of local government entitled to deference under home rule? The obvious effect of an affirmative response to this inquiry is the circumvention of the legislature's failure to expressly or impliedly impose the duty of funding treatment upon Health and Hospital. To answer this query, we need to examine the relationship of Health and Hospital to the home rule provisions enunciated in our statutes.

As observed by the trial court, the Sheriff has included the costs for prisoner medical care in his budget requests to the Council; however, the Council has consistently cut such requests from the Sheriff's budgets. The findings of fact do not reveal what, if any, modifications to Health and Hospital's budgets have been made by the Council. Appellees take the position that the Council's actions indicate the Council's

clear desire to place the duty to provide and fund such care on Health and Hospital. They argue that the will of the Council should be upheld because Health and Hospital's conduct in local medical care is subject to the home rule powers of local government, a somewhat inexplicit argument.

 The consolidated city does possess home rule powers under IC 36–3–2–2 (1982). The consolidated city of Indianapolis and Marion County are units for purposes of the home rule provisions. IC 36–1–2–23. While a unit is provided with broad powers, it does not possess "[t]he power to impose duties on another political subdivision, except as expressly granted by statute." IC 36–1–3–8(3). A municipal corporation is a political subdivision, IC 36–1–2–13, and for purposes of the home rule provisions a municipal corporation can be a local hospital authority or corporation like Health and Hospital. IC 36–1–2–10. Health and Hospital's functions were not among specific matters over which power was transferred to the consolidated city and its county under the provisions of IC 36–1–3.5–2. The General Assembly did not impose upon Health and Hospital a duty to provide nonreimbursed care nor did it expressly grant the Council the power to impose such a duty. Therefore, that duty cannot be imposed by the Council under general home rule powers.

ISSUE TWO—Did the trial court err in holding as a matter of law that none of the Appellees have the duty to provide or fund medical services and hospital care rendered to prisoners of the Sheriff by Wishard Hospital? [10]

PARTIES' CONTENTIONS — Health and Hospital points to the Sheriff's statutory duty to protect his prisoners' well-being and asserts that, to fulfill his duty, the Sheriff must provide appropriate medical care. Because Health and Hospital is under no statutory obligation to provide nonreimbursed care and the Sheriff has no

exemption from payment for such care, Health and Hospital concludes the Sheriff must pay for treatment rendered to his prisoners at Wishard Hospital.

 The Appellees concede that Sheriff owes a duty to protect his prisoners' well-being, but say his duty is limited to summoning aid for a stricken prisoner and does not extend to payment for care rendered at Sheriff's behest.

CONCLUSION—The trial court erred in holding as a matter of law that none of the Appellees have the duty to provide or fund medical services and hospital care for prisoners in the Sheriff's custody who are treated at Wishard Hospital. As between Health and Hospital and the Sheriff, the obligation of payment for the services rendered at Wishard Hospital rests on the Sheriff.

 We start from the generally accepted premise that "[p]risoners are entitled to medical care." 60 AM.JUR.2D *Penal & Correctional Institutions* § 52 (1972). This rule, which is firmly grounded upon a constitutional foundation, applies whether the prisoner is a pretrial detainee, *City of Revere, supra,* or a postadjudication inmate. *Estelle v. Gamble,* (1976) 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251. Implicit in this pronouncement is the realization that incarcerated persons are incapable of meeting their own medical needs.

 In derogation of the broad principle that prisoners are entitled to medical care, Appellees would narrowly read Indiana case law as only requiring the Sheriff to summon aid for an ill inmate, no more. *See Magenheimer v. State ex rel. Dalton,* (1951) 120 Ind.App. 128, 90 N.E.2d 813; *Lamar, supra.* However, as was observed in *Iglesias v. Wells,* (1982) Ind.App., 441 N.E.2d 1017, 1019, "a sheriff has a duty to exercise reasonable care to preserve his prisoner's health." The basis of this humane duty was recognized in *Johnson v. Bender,* (1977) 174 Ind.App. 638, 642, 369

---

**10.** The arguments of the parties are directed exclusively to the relationship between Health and Hospital and the Sheriff; therefore, we limit our discussion and decision to the relationship between those two entities.

N.E.2d 936, 939, *trans. denied* (emphasis supplied):

"The law recognizes an obligation on the part of a sheriff to conform his conduct to a certain standard of care for the benefit of his prisoners. The county sheriff, by himself or deputy, is required to keep the jail and is responsible for the manner in which it is kept. IC 1971, 11–5–1–3 (Burns Code Ed.). He is required to take care of the prisoners committed to the county jail, IC 1971, 17–3–5–2 (Burns Code Ed.), and is responsible for the acts of his deputies. IC 1971, 17–3–5–4 (Burns Code Ed.). *Thus, the sheriff, who is charged with the care and custody of a prisoner, has a duty to take reasonable precautions under the circumstances to preserve the life, health and safety of the prisoner. Rob- erts v. State et al.* (1974), 159 Ind.App. 456, 307 N.E.2d 501; *Magenheimer v. State ex rel. Dalton* (1950), 120 Ind.App. 128, 90 N.E.2d 813; *Ex Parte Jenkins* (1900), 25 Ind.App. 532, 58 N.E. 560."

Of course, the summoning of aid is a part of the Sheriff's obligation to preserve his prisoner's health, but may he stand idly by in an emergency if the one summoned never appears or appears and refuses medical aid without guaranteed payment?

The Indiana legislature has directed the Department of Corrections to promulgate minimum jail standards throughout the state. Among those regulations is the commandment that each county jail have a written arrangement for the use of a designated hospital emergency room or similar facility. *See* 210 I.A.C. § 3–1–11 (1982 Supp., vol. 1). Even before these regulations were adopted, the legislature defined, as one of the Sheriff's basic duties, that "[t]he Sheriff shall ... take care of the county jail and the prisoners there." IC 36–2–13–5(a)(7) (1982).[11]

Further, as Appellees concede, the Sheriff is also subject to the Marion County jail rules which resulted from *Broderick, supra.* Those rules require the Sheriff to send any inmate he and the jail physician believe requires out-of-jail services to Wishard Hospital for treatment. The collective wisdom of the statutory and case law is that the Sheriff must not only summon medical aid, but must provide appropriate medical aid. Humane concern for those unable to fend ·for themselves mandates such a rule. It is the Sheriff who must be the "good Samaritan" in this scenario, and now we reach the heart of this controversy; as between Health and Hospital and the Sheriff, who must pay for the medical services rendered to prisoners of the Sheriff by Wishard Hospital?

As a matter of Indiana law, we have concluded that Health and Hospital is neither obligated nor empowered to render gratis treatment to Sheriff's prisoners. There is no basis in past or present statutory law to impose such a duty on Health and Hospital. Likewise, there is no evidence before the trial court indicating that the prisoners are per se indigent and therefore entitled to treatment by Health and Hospital. Also, we have concluded that the doctrines of estoppel and home rule do not impose an obligation on Health and Hospital in this regard.

The Sheriff, on the other hand, has the statutory duty to "take care of the ... prisoners", IC 36–2–13–5(a)(7), to summon aid, to make arrangements for a designated hospital emergency room, and to send a prisoner he and the jail physician believe needs out-of-jail-treatment to Wishard Hospital. So, as between Health and Hospital and the Sheriff, logic dictates that the Sheriff's duty to care for his prisoners includes the duty to pay for medical treatment. This is not a tortured implication. It has a legal basis.

"Any benefit, commonly the subject of pecuniary compensation, which one, not intending it as a gift, confers on another, who accepts it, is adequate foundation for a legally implied or created promise to render back its value." 6 I.L.E. *Contracts* § 6 (1958). This equitable doctrine is clothed in

---

11. Formerly IC 17–3–5–2 (1976).

various garb—quasi-contract, constructive contract, contract implied in law, or quantum meruit. *Biggerstaff v. Vanderburgh Humane Soc'y, Inc.,* (1983) Ind.App., 453 N.E.2d 363, 364. "A quasi-contract does not arise from the parties' express agreement, but is implied by law in order to remedy the wrongful enrichment of one party at the expense of another." *Hartke v. Moore-Langen Printing & Publishing Co.,* (1984) Ind.App., 459 N.E.2d 430, 432. *See also Dyer Constr. Co. v. Ellas Constr. Co.,* (1972) 153 Ind.App. 304, 287 N.E.2d 262. The doctrine of quasi-contract is often judicially invoked to award payment for services rendered. *See Hartke, supra* (printing of campaign materials); *Biggerstaff, supra* (care of animals); *Briggs v. Clinton County Bank & Trust Co.,* (1983) Ind.App., 452 N.E.2d 989, *trans. denied* (attorney fees); *Dyer, supra* (delivery of construction material); *Wilhoite v. Beck,* (1967) 141 Ind.App. 543, 230 N.E.2d 616, *trans. denied* (provision of room, board, care, and companionship to decedent).

██ So, on the basis of quasi-contract, or contract implied in law, the Sheriff should pay for medical services rendered by Health and Hospital to his prisoners. Medical services, such as those rendered by Health and Hospital, are commonly subject to monetary compensation. The Sheriff is required to provide necessary medical services to inmates of his jail. He clearly receives a benefit from the medical services rendered by Health and Hospital to the prisoners he is required "to take care of". IC 36–2–13–5(a)(7). Moreover, the record clearly reflects the acceptance of the services by Sheriff. And, the record gives no indication that Health and Hospital intended to gratuitously render the services in question.

We are aware of only one other court confronted with a similar question. In *Hospital Bd. of Directors v. Durkis,* (1983) Fla.Dist.Ct.App., 426 So.2d 50, the Florida District Court of Appeals reversed a trial court grant of summary judgment denying liability of a county sheriff to pay charges for services rendered the sheriff's prisoners by a public hospital. In so deciding, the court noted that the Florida Department of Corrections, pursuant to a statutory directive of the Florida legislature, had promulgated administrative regulations for furnishing medical care to county jail prisoners. Those regulations provided that the sheriff must furnish the needed medical care to prisoners. *Id.* at 51. The court observed no statutory duty obligated the public hospital to render free medical services to county jail prisoners. The court reasoned that "the hospital could assume that since a sheriff has a legal duty to provide medical services for prisoners, he has authority to contract or make arrangements for hospitalization of a prisoner." *Id.*

Thus, we would agree with the Florida District Court of Appeals in its conclusion,

"that a sheriff who has custody of such a prisoner is responsible for his immediate medical needs and impliedly agrees to pay the necessary and reasonable hospital charges when a prisoner in his custody must be hospitalized. Therefore, a hospital which admits the prisoner is entitled to rely upon the fact that a sheriff is authorized to contract or incur a debt for such reasonable and necessary medical treatment as is required."

*Id.*

Another question is presented as to whether the Sheriff is entitled to seek reimbursement for such expense from the prisoner or from other agencies of government. It may very well be so, but no such issue is presented or decided by this case. All we are deciding is the narrow issue that, as between the Sheriff and Health and Hospital, it is the duty of the Sheriff to pay Health and Hospital for medical and hospital expenses incurred on behalf of prisoners.

The trial court erred as a matter of law in its entry of summary judgment in favor of Appellees. This cause is reversed and remanded for proceedings consistent herewith.

SHIELDS, J., concurs.

SULLIVAN, J., concurs in result.